Rafael C. YABUT, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–1372.

United States Court of Veterans Appeals.

Dec. 14, 1993.

As Amended Jan. 4, 1994.

Rafael C. Yabut, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Susan A. Wuchinich were on the pleadings for appellee.

Before FARLEY, MANKIN and HOLDAWAY, Judges.

FARLEY, Judge:

Appellant, Rafael C. Yabut, appeals from a July 29, 1992, decision of the Board of Veterans' Appeals (BVA) which denied reopening of claims previously adjudicated, and denied service connection for claims not previously considered. *Rafael C. Yabut,* BVA 92–18063, at 5–6 (July 29, 1992). A timely appeal to this Court followed. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). On April 29, 1993, appellant filed an informal brief. On June 3, 1993, the Secretary filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of proceedings pending a ruling on this motion. On consideration of the record on appeal and the parties' briefs, the Court will vacate in part, vacate and remand in part, and affirm in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant served in the Philippine Commonwealth Army in the service of the Armed Forces of the United States from November 24, 1941, to July 29, 1942, and from February 18, 1945, to June 30, 1946. Appellant was held prisoner of war (POW) of the Imperial Japanese Government from April 10, 1942, to July 29, 1942. R. at 26–29; Supplemental R. at 1. In 1961, the VA regional office (RO) denied appellant's claim for service connection for residuals of a shrapnel wound to the left foot based on the absence of service records indicating incurrence during service. *See* R. at 52. In 1971, the RO denied appellant's claims for, inter alia, malnutrition and multiple vitamin deficiencies based on a VA examination revealing appellant suffered from neither condition. R. at 87; *see also* R. at 80 (VA exam finding no disease due to nutritional or dietary deficiency or malnutrition). In 1983 and 1984, the RO denied reopening of appellant's claim for service connection for residuals of a shrapnel wound to the left foot, noting that the evidence failed to indicate service incurrence or aggravation. *See* R. at 114, 150. Additionally in 1984, the RO denied reopening of appellant's claim for malnutrition based on no new and material evidence, and denied service connection in the first instance for nervous breakdown since there existed no evidence of a nervous condition during service and a November 9, 1983, VA examination found no mental disease. R. at 150; *see also* R. at 126 (VA exam finding no mental disease nor evidence of nutritional deficiency).

On appeal in 1984, the BVA denied service connection for residuals of a shrapnel wound to the left foot, malnutrition, and acquired psychiatric disorder, noting that the Statement of the Case (SOC) issued pursuant to the 1984 RO denial failed to include language pertaining to the finality of decisions, thus allowing the BVA de novo review. R. at 167, 170. Pursuant to appellant's 1990 appeal the VA performed numerous medical examinations and laboratory tests. *See* R. at 172, 178–220. The RO found no evidence to alter the previous denial of service connection for residuals of a shrapnel wound to the left foot, denied service connection for anemia and osteoarthritis since there existed no record that these conditions were incurred in or aggravated during service, denied claims for mental disease, neuritis, malnutrition, and avitaminosis since the 1990 VA examinations found no evidence of same, and denied the

claim for ascariasis since no official service records indicated treatment during service and "mere findings of ascariasis ova on laboratory examination does not establish [service connection] for this condition." R. at 221.

On September 20, 1991, the BVA remanded appellant's case for further development regarding a possible claim for post-traumatic osteoarthritis, which is presumptively service connected if manifest to a degree of 10% or more in a former POW interned not less than 30 days. *See* 38 U.S.C.A. § 1112(b)(12) (West 1991); R. at 248. Pursuant to the remand, a 1991 VA examination performed by Dr. Alberto Chua diagnosed appellant as suffering from osteoarthritis, but specifically found it "not post-traumatic in origin." R. at 257. On July 29, 1992, the BVA denied reopening of appellant's claims for service connection for malnutrition, avitaminosis, psychiatric disability, and residuals of shell fragment to the left foot with traumatic neuritis since new and material evidence had not been submitted with respect to those claims, and further denied service connection for traumatic arthritis, helminthiasis, and residuals of anemia as these conditions were not shown to have been incurred in or aggravated during service. *See Yabut,* BVA 92–18063, at 5–6.

## II. APPLICABLE LAW

■ A final BVA decision "may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C.A. § 7104(b) (West 1991). The exception to this rule states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C.A. § 5108 (West 1991); *see also Thompson v. Derwinski,* 1 Vet.App. 251, 253 (1991). Therefore, once a BVA decision becomes final under section 7104(b), absent new and material evidence presented or secured, the BVA cannot reopen or readjudicate the claim. 38 U.S.C.A. § 5108; *see also McGinnis v. Brown,* 4 Vet.App. 239, 244 (1993) (BVA reopening is unlawful when no new and materi-

al evidence has been submitted). Evidence is new when not merely cumulative of other evidence on the record. Evidence is material when relative to and probative of the issue at hand, and of sufficient weight to present a reasonable possibility that the new evidence, when viewed in conjunction with the old, would change the disposition of the claim. *See Sklar v. Brown,* 5 Vet.App. 140, 145 (1993); *Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991); *see also Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). Whether evidence is new and material is a question of law this Court reviews de novo. *See Spencer v. Brown,* 4 Vet.App. 283, 887 (1993); *Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *see also* 38 U.S.C.A. § 7261(a)(1) (West 1991).

■ New and material evidence is not required, however, to reopen a claim of a former POW interned not less than thirty days for those diseases entitled to presumptive service connection when manifest to a degree of 10% or more anytime after active service. *See Suttmann v. Brown,* 5 Vet.App. 127, 137 (1993); *see also* 38 U.S.C.A. § 1112(b) (West 1991) (indicating those diseases for which presumptive service connection applies). All that is required is that the former POW submit a well grounded claim. *Suttmann,* 5 Vet.App. at 134–37; *see also Peña v. Brown,* 5 Vet.App. 279, 280–81 (1993) (claim for POW presumptive service-connected disease need only be well grounded). A well grounded claim is one which is plausible, "meritorious on its own or capable of substantiation." *Murphy v. Derwinski,* 1 Vet. App. 78, 81 (1990); *see also* 38 U.S.C.A. § 5107(a) (West 1991) (burden on claimant to submit a well grounded claim); *Grottveit v. Brown,* 5 Vet.App. 91, 92 (1993) (a well grounded claim creates "a belief by a fair and impartial individual that the claim is plausible." (quoting *Tirpak v. Derwinski,* 2 Vet. App. 609, 611 (1992)).) Presumptive service connection, including that applicable to former POWs under § 1112(b), is rebuttable by affirmative evidence to the contrary. *See* 38 U.S.C.A. § 1113(a) (West 1991); 38 C.F.R. § 3.307(d) (1993). Whether a claim is well grounded is a matter of law which this Court reviews de novo. *See Grottveit,* 5 Vet.App. at 92.

## III. ANALYSIS

Appellant's claims can be grouped into two categories: claims for conditions entitled to POW presumptive service connection under 38 U.S.C.A. § 1112(b) and claims not entitled to POW presumptive service connection.

### A. Diseases Entitled to POW Presumptive Service Connection

#### 1. *Avitaminosis, Malnutrition, and Psychiatric Disability*

■ Avitaminosis, malnutrition, psychosis, any of the anxiety states, and dysthymic disorder (or depressive neurosis) are presumed service connected under § 1112 when manifest to a degree of 10% or more in a former POW interned not less than 30 days. *See* 38 U.S.C.A. § 1112(b)(1), (b)(5), (b)(8)–(10) (West 1991); *see also* 38 C.F.R. § 3.309(c) (1993). (Avitaminosis is defined as "hypovitaminosis" or "a condition due to a deficiency of one or more essential vitamins." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 174, 810 (27th ed. 1988).) While the basis for appellant's claim for psychiatric disability is not completely clear from the record on appeal or from the BVA's treatment of the claim, given the context in which appellant initiated this claim, the Court will assume that it is alleged pursuant to 38 U.S.C.A. § 1112(b)(8)–(10), which allows for POW presumptive service connection. *See* R. at 71 (appellant's request for "POW benefits").

Appellant's claims for avitaminosis and malnutrition were first reviewed and denied by the RO in 1971. R. at 87. Thereafter, the RO in 1984 determined that the evidence failed to show appellant had suffered from nervous breakdown to a compensable degree, based on the medical diagnosis rendered on a VA medical examination which found "no mental disease" on December 9, 1983, and found no new and material evidence on the malnutrition and avitaminosis claims. R. at 126, 150. On appeal in 1992, the BVA refused to reopen the claims for avitaminosis, malnutrition, and psychiatric disability, citing *Colvin* and *Manio, supra,* and finding that appellant had failed to introduce new and material evidence since the 1984 BVA denial as required by 38 U.S.C.A. § 5108. *Yabut,* BVA 92–18063, at 5–6, 7–10, 16–17.

The BVA applied the incorrect standard with respect to these claims. New and material evidence is not required to reopen the claim of a former POW for a disease presumptively service connected under 38 U.S.C.A. § 1112(b). *See Suttmann,* 5 Vet. App. at 137; *see also* 38 U.S.C.A. § 1112(b)(1), (b)(5), (b)(8)–(10). All that is required is that the former POW submit a well grounded claim. *See Peña,* 5 Vet.App. at 280–81; *Suttmann,* 5 Vet.App. at 134–37.

■ Appellant's 1946 discharge summary indicates appellant was discharged with no medical problems. R. at 30–31. VA examinations subsequently diagnosed appellant as suffering "no disease due to malnutrition or dietary deficiencies" in 1971, and "no residual evidence of ... malnutrition [or] avitaminosis" in 1990. R. at 80, 185. Dr. Warren, a VA psychiatrist, diagnosed appellant in 1990 as having "no mental disease. Mentally competent for VA purposes." *See* R. at 208–09. In fact, there is no evidence in the record from which to conclude that appellant's claims for malnutrition, avitaminosis, and psychiatric disability were plausible or otherwise well grounded. *See* 38 U.S.C.A. § 5107(a); *Murphy,* 1 Vet.App. at 81 (a well grounded claim is a plausible claim). The Court holds as a matter of law that appellant has failed to submit well grounded claims for malnutrition, avitaminosis, or psychiatric disability. *See Tirpak,* 2 Vet.App. at 611; *Grottveit,* 5 Vet.App. at 92–93. To the extent that the BVA erred in treating the claims as well grounded and applying the wrong standard in purporting to deny the claims, any such error was harmless. *See* 38 U.S.C.A. § 7261(b) (requiring the Court to account for the rule of prejudicial error).

#### 2. *Helminthiasis with Secondary Anemia*

■ Helminthiasis, when manifest to a degree of 10% or more in a former POW who was interned for not less than 30 days, is presumed service connected. *See* 38 U.S.C.A. § 1112(b)(4). (Helminthiasis is a worm infection. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 739 (27th ed. 1988).) Such presumptions of service connection are rebuttable by affirmative evidence to the con-

trary. *See* 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307(d). "The expression 'affirmative evidence to the contrary' will not be taken to require a conclusive showing as would, in sound medical reasoning and in the consideration of all the evidence of record, support a conclusion that the disease was not incurred in service." 38 C.F.R. § 3.307(d). Under 38 C.F.R. § 3.307(d), presumed service connection is rebuttable by "residence during the period in question in a region where the particular disease is endemic."

No mention of ascaris ova, helminthiasis, or other worm infestation is contained in appellant's discharge medical examination. R. at 30. The first indication of record that appellant was infected with worms is a 1983 test which revealed ova and parasites. R. at 141. Despite this finding, neither the 1984 RO nor the 1984 BVA decision indicates that a possible claim for service connection for helminthiasis under § 1112(b) was raised or considered. *See* R. at 150, 166–71. In 1990, a blood and feces test found "ascaris lumbricoides ova." R. at 200. The 1990 RO decision, however, stated that "mere findings of ascariasis ova on laboratory examination does not establish [service connection] for this condition." R. at 221.

■ In its 1992 decision, the BVA commented upon the character of the evidence necessary to rebut the presumption of service connection:

> Evidence which may be considered a rebuttal of service incurrence of a disease listed in 38 C.F.R. [§] 3.309 will be any evidence of a nature usually accepted as competent to indicate the time of existence of inception of disease, and *medical judgment* will be exercised in making determinations relative to the effect of intercurrent injury or disease.

*Yabut,* BVA 92–18063, at 15 (emphasis added). While 38 C.F.R. § 3.307(d) permits as rebuttal of service connection a veteran's "residence during the period in question in a region where the particular disease is endemic," such evidence in the absence of other corroborative independent medical evidence—"medical judgment" as the BVA put it—in rebuttal fails to satisfy § 1113, which requires affirmative evidence to the contrary.

*See* 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307(d). Here, there is no indication in the record or in the BVA decision which reflects the exercise of medical judgment described by the BVA. As this Court said in *Colvin:*

> BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions. *See* 38 U.S.C. § [7109 (1991) ]; *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). This procedure ensures that all medical evidence contrary to the veteran's claim will be made known to him and be a part of the record before this Court.

*Colvin,* 1 Vet.App. at 175. Here, the BVA merely relied on INFECTIOUS DISEASES AND MEDICAL MICROBIOLOGY, a medical treatise, in concluding that

> [t]he Philippines, the appellant's residence is a tropical region where sanitation is generally inadequate. That being the case, we conclude that the presumption of service connection is rebutted under 38 C.F.R. 3.307(d), since the evidence shows that the intestinal parasitic disease is endemic to his place of residence, and more probably represents an incurrent disease rather than a disease related to military service or prisoner-of-war internment.

*Yabut,* BVA 92–18063, at 16.

■ In *Thurber v. Brown,* 5 Vet.App. 119 (1993), the Court held that where the BVA relies, in rendering a decision, upon any evidence, such as a medical treatise, developed or obtained by it after issuing of the most recent SOC or Supplemental SOC with respect to such claim, the BVA must provide the veteran with reasonable notice of the evidence and of the reliance proposed to be placed on it, as well as a reasonable opportunity for the veteran to respond to that evidence. *Id.* at 126. In this instance, there is no indication that the BVA notified appellant

of its intended use of the medical treatise or offered him a reasonable opportunity to respond to same. Furthermore, this Court, as noted earlier, is required by statute to "take due account of the rule of prejudicial error." 38 U.S.C.A. § 7261(b). In appellant's informal brief, he maintained that

> ... with the advance in medicine under the United Nations spearheaded by American medical experts, endemicity is only true in very remote areas in the deep primitive wildness of the forests and not applicable to appellant who has been living in an urban area where sanitation is adequately observed and where doctors, and medicines abound.

Appellant's Br. at 6. Under these circumstances, i.e., where appellant has presented a plausible argument that he has been prejudiced by the BVA's error in failing to notify him of its intent to rely upon a medical treatise, it cannot be said that the error was harmless. *Cf. Thompson,* 1 Vet.App. at 254.

■ The BVA decision denying appellant's claim for service connection for helminthiasis must be vacated and remanded for readjudication. The BVA may not substitute its own medical judgment in rendering a decision. *See Colvin,* 1 Vet.App. at 175 (the BVA may consider only independent medical evidence). While *Colvin* allows for the use of medical treatises as independent support, such must be accomplished within the confines of *Thurber.*

Appellant also sought review of the denial of his claim for anemia secondary to helminthiasis. However, pursuant to 38 C.F.R. § 4.117, Diagnostic Code 7701 (1993), secondary anemia is rated by the primary disease. Therefore, the claim for secondary anemia is necessarily subsumed in the remanded claim for service connection for helminthiasis.

### 3. Post–Traumatic Osteoarthritis

In 1990, the RO denied appellant's claim for, *inter alia,* direct service connection for osteoarthritis. R. at 220. In consideration of appellant's status as a former POW, the BVA remanded the case to the RO for further development pertaining to post-traumatic osteoarthritis, a POW presumptively service-connected condition. R. at 248; *see also* 38 U.S.C.A. § 1112(b)(12). Dr. Alberto Chua examined appellant pursuant to the BVA remand and determined that appellant suffered from osteoarthritis in both hips and both feet, but specifically found that it was "not post-traumatic in origin." R. at 257.

In denying appellant's claim for post-traumatic osteoarthritis, the BVA made no mention of Dr. Chua's diagnosis. *See Yabut,* BVA 92–18063, at 11–13. The BVA, however, did cite to three medical treatises, namely OPERATIVE ORTHOPEDICS, CURRENT MEDICAL DIAGNOSIS AND TREATMENT, and ORTHOPEDICS: PRINCIPLES AND THEIR APPLICATION, in support of its conclusion that appellant's osteoarthritis was not traumatic in nature. The BVA failed, however, to notify appellant of its intended use of the treatises or to provide an opportunity for appellant to respond. *Yabut,* BVA 92–18063, at 11–13; *see Thurber,* 5 Vet.App. at 126.

■ In this instance, the record contains a specific medical diagnosis from Dr. Chua that appellant's osteoarthritis was not "post-traumatic in origin." R. at 257. Despite the BVA's failure to rely on Dr. Chua's diagnosis, the diagnosis is of record and serves as a plausible basis for the BVA's denial of service connection based on the factual finding that appellant does not suffer from *traumatic* osteoarthritis. "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). The failure of the BVA to provide appellant with notice and an opportunity to respond to the medical treatises superfluously cited in its decision constitutes harmless error. *See* 38 U.S.C.A. § 7261(b). There is no evidence in the record which supports the claim advanced by appellant that he suffers from osteoarthritis *caused by trauma.* Accordingly, appellant cannot benefit from the presumptive service connection of 38 U.S.C.A. § 1112(b)(12), and there is a plausible basis in the record for the factual conclusion of the BVA that appellant's current arthritic condition is not service connected.

### B. Diseases Not Entitled to POW Presumptive Service Connection

#### 1. Residuals of a Shrapnel Wound to the Left Foot

Appellant's claim for residuals of a shrapnel wound to the left foot was first denied in a 1961 RO decision, and in 1971, the RO denied reopening of the claim based on a finding that no new and material evidence had been submitted since 1961. R. at 52, 86–87. On appeal in 1984, the BVA found that the "claimed shell fragment wound of the left foot with traumatic neuritis was not incurred in or aggravated by service." R. at 170. In 1992, the BVA refused to reopen appellant's claim since it found that the evidence submitted after the 1984 denial was merely cumulative of evidence previously considered. *Yabut*, BVA 92–18063, at 9–10. The issue with respect to this claim is whether new and material evidence has been submitted since the 1984 BVA denial which would warrant reopening appellant's claim for service connection for residuals of a shrapnel wound to the left foot.

■ New evidence submitted or secured since the 1984 BVA decision includes two VA medical examinations performed in 1990 and 1991. *See* R. at 184, 192, 257. The 1990 medical evaluations indicate appellant had a "[h]ealed scar left foot residual of shrapnel wound," R. at 184, and "left foot with healed scar residual of shrapnel wound measuring 4 × 5 CM in diameter slightly depressed," R. at 192. In 1991, a medical evaluation to determine if the osteoarthritis was post-traumatic in nature states, "Res[iduals] of *alleged* shrapnel wound, left foot." R. at 257 (emphasis added).

Evidence of record in 1984 included appellant's discharge examination, which was negative for skin and feet problems. R. at 30. A VA hospital form indicated that appellant was hospitalized from June 26, 1977, to July 7, 1977, for a "chronic ulcer . . . of left foot," R. at 110, which was confirmed by an affidavit of Emilliano P. Santos stating that he had accompanied appellant, who was suffering from an "infection due to recurrent of the sharpnel [sic] wound on his left foot." R. at 113. Appellant further submitted a statement of Dr. Avesino A. Saguiped, dated March 2, 1983, which related that appellant "came to [his] clinic May 15, 1978 with a swallen [sic] left foot, with puss [sic] oozing from the ulcer. While under treatment a sharpnel [sic] came out from the inflamed ulcer." R. at 108–09. However, in 1983, the RO denied reopening appellant's claim for residuals of a shrapnel wound on a finding that the evidence appellant had submitted, indicating treatment for an injury subsequent to service, failed to establish service connection in the absence of official records showing the wound had occurred during service. R. at 114.

The evidence before the BVA in 1984 further included recognition of a two-inch longitudinal scar, "allegedly a resid[ual] of a [shrapnel wound]," noted on appellant's left foot during the December 1983 VA exam. R. at 126. Similarly, the examinations in 1990 and 1991 revealed a scar on appellant's left foot caused or allegedly caused by a shrapnel wound. Thus the evidence submitted since the final BVA decision in 1984 is cumulative of evidence before the BVA in 1984, and none of the evidence submitted bears directly on the issue of service connection. Therefore, new and material evidence within the meaning of *Colvin* has not been submitted or secured since the 1984 BVA denial, because all such evidence is cumulative of previously considered evidence. *See Colvin*, 1 Vet.App. at 174.

#### 2. Direct Service Connection for Anemia

■ Anemia was not shown at discharge, nor was it manifest within one year of discharge. *See* 38 U.S.C.A. §§ 1110–1112 (West 1991); R. at 30. As the BVA stated:

> . . . affidavits by fellow servicemen and statements by private physicians make no reference to the appellant having anemia in service or subsequent thereto. The earliest post service clinical evidence pertaining to anemia was not until VA examination in 1983, when blood laboratory values were slightly decreased. [Citation omitted.] Anemia, however, was not diagnosed until VA examination in 1990. Therefore, we conclude that anemia was not present

during service and was initially medically shown more than 34 years after service at a time too remote to be reasonably related to service.

*Yabut,* BVA 92–18063, at 14.

There is a plausible basis in the record for the BVA's denial of service connection for anemia, and such finding is not clearly erroneous. Summary affirmance of this claim is appropriate. *See Frankel v. Derwinski,* 1 Vet.App. 23 (1990). Therefore, the Court affirms the BVA denial of direct service connection for anemia. *See Gilbert,* 1 Vet.App. at 52–53.

## VI. CONCLUSION

The Court would be remiss if it did not note that the informal brief submitted by appellant, the Secretary's motion for summary affirmance in lieu of a brief, and, indeed, the BVA decision itself were all excellent. The writing was superb; the arguments and conclusions were well articulated and well reasoned. It is apparent that all concerned expended great effort and the Court wishes to extend its appreciation.

Upon consideration of the record, appellant's informal brief, and the Secretary's motion for summary affirmance in lieu of a brief, the Court holds that the July 29, 1992, decision of the Board of Veterans' Appeals is VACATED in part with respect to appellant's claims for psychiatric disability, malnutrition, and avitaminosis because those claims were not well grounded; VACATED in part and REMANDED for readjudication with respect to appellant's claim for helminthiasis with secondary anemia; and AFFIRMED in part with respect to appellant's claims for service connection for residuals of a shrapnel wound to the left foot, anemia, and post-traumatic osteoarthritis.