Sergia T. QUIAMCO, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–606.

United States Court of Veterans Appeals.

March 15, 1994.

---

Sergia T. Quiamco, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Mi-

chele Russell Katina, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, MANKIN, and STEINBERG, Judges.

MANKIN, Judge:

The appellant, Sergia T. Quiamco, widow of veteran Alejandro Quiamco, appeals the February 27, 1992, Board of Veterans' Appeals (BVA or Board) decision which denied entitlement to service connection for the cause of the veteran's death. The Secretary filed a motion for summary affirmance. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, we will vacate the February 1992 decision of the BVA and will remand the case for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

The veteran served on active duty in the United States Armed Forces in the Far East as an inductee from November 1941 to January 1943 and from July 1945 to December 1945. During World War II, he was held as a prisoner of war (POW) by the Japanese from April 21, 1942, to January 24, 1943. R. at 13. The veteran's separation examination on December 27, 1945, showed normal findings.

Since 1960, the veteran had attempted to obtain service connection for his disabilities and was repeatedly denied by BVA decisions in August 1961, May 1972, and July 1984 and by Regional Office (RO) rating decisions issued in 1960, 1971, 1983, and 1987. The first mention of a peptic ulcer is in a certificate from Dr. Caballero dated September 7, 1972, which states that the veteran was hospitalized in the Veterans Memorial Medical Center with a diagnosis of peptic ulcer among other conditions. However, a March 1983 VA physical examination under the POW protocol made no mention of a peptic ulcer and a July 1983 RO decision found that service connection for a stomach condition was not established by the evidence. A July 1984 BVA decision denied service connection. Another VA POW protocol examination conducted in November 1986 found no medical evidence of a stomach disorder. An RO deci-

sion in January 1987 denied service connection for peptic ulcer, stating, "[T]here is no evidence of diagnosis of ... peptic ulcer by approved methods ... to a degree of at least 10%." However, the RO decision also cites evidence submitted by the veteran's private physicians showing treatment for peptic ulcer in June 1986 and for peripheral neuritis with peptic disease in July 1986. A May 1987 VA POW protocol examination made no findings of a peptic ulcer.

An August 12, 1987, RO decision denied the veteran service connection for intestinal parasitism (hookworm), Vitamin B deficiency, and many other conditions, including peptic ulcer. The veteran appealed. A July 7, 1988, BVA decision remanded the case to the "originating agency to determine the particular disability or disabilities for which the appellant is claiming service connection." The BVA instructed that this matter should be clarified by the originating agency, and that, if benefits sought were not granted, the case should be returned to the Board for further appellate consideration. In August 1988, the veteran was confined to the Dr. Manuel B. Veloso Memorial hospital for several days due to a bleeding peptic ulcer and glomerulonephritis. An October 1988 POW protocol examination, including upper gastrointestinal series, however, failed to diagnosis the veteran with these two conditions.

On January 10, 1989, the veteran was once again confined to the hospital, and the impression given by Dr. Fresito P. Payos was a bleeding peptic ulcer. On January 25, 1989, an exploratory laparotomy performed on the veteran revealed a periumbilical peritoneal band, massive ascites, a cirrhotic liver, and perigastric varices. The veteran died on February 17, 1989, in the Dr. Manuel B. Veloso Memorial Hospital in the Philippines. Dr. Payos completed a discharge summary which gave a final diagnosis of bleeding peptic ulcer and hepatoma. He also completed a medical certificate which made a final diagnosis of "Hepatoma with Acid Peptic Disease and secondary Complete Intestinal Obstruction (large intestine)." The death certificate, attested to by Dr. Romeo A. Beltran, listed cardiorespiratory arrest as the immediate cause of death, hepatoma as the antecedent

cause, and acid peptic disease as the underlying cause. Complete intestinal obstruction of the large intestine was also listed as a significant condition contributing to his death. The veteran was not service connected at the time of his death.

Letters from the appellant to the BVA Chairman dated August 12, 1989, and November 21, 1989, indicate that the veteran died while awaiting the remand of his case. On July 12, 1990, the appellant filed VA Form 21–534, Application for Dependency and Indemnity Compensation (DIC) benefits. A letter dated August 6, 1990, from the RO informed the appellant that she had no entitlement to death benefits because the veteran's death was not due to a service-connected disability. A deferred rating decision on September 8, 1990, requested a field examination to determine the cause of the veteran's death. A January 17, 1991, rating decision denied service connection for the cause of the veteran's death, stating that there was no evidence of record which related the veteran's death to his active military service. The appellant appealed this denial of death benefits to the BVA. A February 27, 1992, BVA decision denied entitlement to service connection for the cause of the veteran's death. In its decision, the BVA cited a medical textbook entitled FUNDAMENTALS OF INTERNAL MEDICINE to support its conclusion that hepatoma was the primary cause of death because its "very nature is so overwhelming that eventual death can be anticipated irrespective of coexisting conditions." The Board further concluded that even if service connection were to be granted for peptic ulcer disease, there was no showing that it was a contributory cause of death.

## II. ANALYSIS

The surviving spouse of a veteran who has died after December 31, 1956, may file a claim for DIC benefits. 38 U.S.C. §§ 1310, 1311. Under section 1310(a),

> When any veteran dies after December 31, 1956, from a service-connected or compensable disability, the Secretary shall pay [DIC] to such veteran's surviving spouse, children, and parents. The standards and criteria for determining whether or not a

disability is service-connected shall be those applicable under chapter 11 of this title.

A veteran's death will be considered service connected where a service-connected disability is either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a) (1993). A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or *underlying cause* of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1993) (emphasis added). A contributory cause of death must be causally connected to the death and must have "contributed substantially or materially" to death, "combined to cause death," or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c)(1) (1993).

### A. Accrued Benefits Claim

■ At the outset, the Court notes that pursuant to 38 U.S.C. § 5101(b), a claim for DIC "shall also be considered" a claim for "accrued benefits." *See Isenhart v. Derwinski,* 3 Vet.App. 177, 179 (1992); *Satchel v. Derwinski,* 1 Vet.App. 258, 259–60 (1991). To be entitled to accrued benefits, a spouse must show that the veteran was entitled to the "periodic monetary benefits" "at death[,] under existing ratings or decisions, or those [benefits] based on evidence in the file at date of death ... and due and unpaid for a period not to exceed one year...." 38 U.S.C. § 5121(a). Under 38 U.S.C. § 5121(c) a claim for accrued benefits must be filed within one year after the veteran's death, and the appellant did not file her DIC application until July 1990. The Board did not, however, explore the possibility that the appellant may have filed an informal claim for accrued benefits under 38 C.F.R. § 3.155(a) (1993) in August 1989 when she first sent the BVA Chairman a letter informing him of the veteran's death. In this letter the appellant stated: "The cause of death of the veteran is within the meaning of PL 100–332, and therefore being a presumptive service-connection, the widow has all the rights [and] entitlement for these disability benefit[s]...." Therefore, this issue must be remanded so that the Board may seek addi-

tional records pertinent to the question of receipt of an informal claim. The BVA should then determine whether the RO received the appellant's August and November 1989 letters to the BVA Chairman and, if so, whether such receipt constituted the timely receipt of an informal claim. *Cf. Chadwick v. Derwinski,* 1 Vet.App. 74, 76 (1990) (receipt of VA Form 21–4138, Statement in Support of Claim, within requisite 120–day jurisdictional filing period constituted filing valid Notice of Appeal). If not, since the record does not indicate whether the VA Adjudication Procedure Manual provision at part II, ch. 5, para. 5.29 (providing for RO to send DIC application to veteran's survivors upon receiving notice of death of veteran with pending claim), was complied with, the BVA should seek additional records pertinent to the question of compliance. The BVA should then determine whether there has been compliance with such provision and, if not, what effect any noncompliance had on the appellant's claim for accrued benefits. *See* 38 U.S.C. § 5121(c); *Hamilton v. Brown,* 4 Vet. App. 528, 544–45 (1993) (en banc); *Quarles v. Derwinski,* 3 Vet.App. 129, 137 (1992); *Servello v. Derwinski,* 3 Vet.App. 196, 199–200 (1992); *Smith v. Derwinski,* 2 Vet.App. 429, 434–35 (1992).

### B. *Reasons or Bases*

 In the instant case, the death certificate listed the immediate cause of death as cardiorespiratory arrest, the antecedent cause as hepatoma, and the "underlying cause" as acid peptic disease. Although the veteran at the time of his death was not service connected for peptic disease, the Board, in its decision, did not provide an analysis of the probative value of the evidence that would tend to support a claim for service connection. For instance, the Board virtually ignored 17 years' worth of hospital records, which revealed that the veteran was admitted at least three times with a diagnosis of bleeding peptic ulcer, and statements from private physicians who repeatedly diagnosed the veteran as suffering from a peptic ulcer. Further, and what is particularly striking, the Board makes no attempt to explain how the veteran—a former POW who is entitled to the presumption of 38 U.S.C. § 1112(b)(15)

which allows that if peptic ulcer disease becomes manifest to a degree of 10% after service, then it shall be considered to have been incurred in or aggravated by service, notwithstanding that there is no record of such disease during service—is not entitled to service connection for peptic ulcer disease when not only the veteran's death certificate, but the discharge summary and medical certificate completed at death, diagnose him with, *inter alia,* acid peptic disease and the death certificate specifically lists that disease as the "underlying cause" of death. Instead, the Board gave little weight to these documents and placed heavy reliance on the veteran's last VA examination dated October 1988 which found no evidence of a peptic ulcer. However, this examination was performed a full three months before the veteran was admitted to the hospital for a bleeding peptic ulcer in January 1989, a condition which was found to be the underlying cause of the veteran's death one month later.

 This Court recognizes that its function is not to speculate on the relationship between a veteran's service-connected disabilities and the cause of death; rather, the function of this Court is to determine whether the Board's factual determinations on the issue constitute clear error. *See Shoemaker v. Derwinski,* 3 Vet.App. 248, 254 (1992). However, in order for the Court to determine whether the BVA's factual findings related to cause of death are clearly erroneous, the Board is required to provide an adequate written statement of the reasons or bases for its findings and conclusions on "all material issues of fact or law presented on the record." *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57, *see* 38 U.S.C. § 7104(d)(1). Therefore, in making findings of fact, the Board is required to consider and discuss all evidence on both sides of the issue, and to reconcile any conflicts among such evidence or, alternatively, provide an explanation of the reasons for rejecting evidence favorable to the claimant or determining that such evidence is of little relative weight or probative value. *Bucklinger v. Brown,* 5 Vet.App. 435, 438–39 (1993). Further, according to *Williams (Willie) v. Brown,* 4 Vet.App. 270, 273–74 (1993), "[i]n a case where there is significant

evidence in support of an appellant's claim ..., the Board must provide a satisfactory explanation as to why the evidence [is] not in equipoise" so as to require the application of the benefit-of-the-doubt rule which would resolve the issue in favor of .the claimant. Therefore, a remand is necessary so that the Board may provide an analysis of the credibility or probative value of the evidence in support of the appellant's DIC claim and a statement of the reasons or bases for its analysis, including any rejection, of this evidence by the Board. *See Gilbert,* 1 Vet.App. at 59.

■ In addition, the Board failed to consider regulations, such as 38 C.F.R. § 3.312(c)(3) and (4) (1993), which may be applicable to the appellant's claim. On remand, the Board should determine whether any service-connected condition resulted in "debilitating effects and general impairment of health to an extent that would render the person materially less capable of resisting the effects of other disease or injury primarily causing death." 38 C.F.R. § 3.312(c)(3).

### C. Medical Evidence

In its decision, the Board cited the following excerpt from a medical treatise:

The factors that predispose a patient to the development of primary carcinomas of the liver include cirrhosis (particularly hemochromatosis and idiopathic cirrhosis), chronic hepatitis B virus infection, and the exposure to high levels of aflatoxin in the diet. The high incidence of hepatitis B infections and the contamination of food with aflatoxin might contribute to the high incidence of hepatomas in certain populations in Asia and Africa.

The major clinical features of hepatoma are sudden hepatic decompensation in a patient with previously stable cirrhosis (usually caused by a tumor invasion or thrombosis of portal or hepatic veins), gastrointestinal bleeding, the rapid development of ascites (often containing blood or malignant cells), sudden enlargement of the liver with local pain and a vascular bruit or friction rub, hypoglycemia, and increased plasma levels of a-fetoprotein. (I)n patients with cirrhosis, the develop-

ment of a hepatoma usually leads to death.... FUNDAMENTALS OF INTERNAL MEDICINE, (Donald Kaye, M.D. and Louis F. Rose, M.D., eds., p. 890, 1983, C.V. Mosby Company, St. Louis, MO)[.]

On the basis of this excerpt, the Board concluded that hepatoma, which was listed as the antecedent cause of death on the veteran's death certificate should be considered the primary cause of death because "by its very nature [it] is so overwhelming that eventual death can be anticipated irrespective of coexisting conditions." On the next page of its decision, the Board concluded:

The evidence shows ... that the veteran's signs and symptoms were classic for hepatoma, although there may have been an initial impression that the presenting gastrointestinal bleeding may have been due to peptic ulcer disease. The cause of death, however, was overwhelming [sic] irrespective of any other underlying disorders. We perceive no sound medical reason to associate the veteran's hepatoma with service or any incident of service.

■ This Court has held in numerous opinions that the BVA may not refute the expert medical conclusions in the record with its own unsubstantiated medical conclusions. *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991). In *Colvin,* this Court observed that:

BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions.

*Id.; see also Hatlestad v. Derwinski,* 3 Vet. App. 213, 217 (1992) (requiring Board prospectively—after July 8, 1992—to include quotations (not bare citations) from medical treatises if relying on those treatises). The Board's reliance on the excerpted portion of the medical treatise quoted above is fundamentally flawed in that this quotation makes no mention of acid peptic disease which was cited as the underlying cause of the veteran's

death. The Board does not fulfill the mandates of *Colvin* simply by quoting any medical treatise; the treatise quoted must bear directly on the veteran's medical condition. The Board's analysis is deficient in that it focused almost exclusively on the hepatoma which is listed on the death certificate as the antecedent cause of death, but failed to acknowledge the entirety of the veteran's condition, including his several hospitalizations for a bleeding peptic ulcer. A quotation from a medical treatise that ignores the evidence that weighs in favor of the appellant's claim does not provide adequate independent medical evidence upon which the Board may base its findings. Therefore, the medical treatise quotation, which speaks in terms of "usually," does not "clearly support" the Board's ultimate conclusion that hepatoma is so "overwhelming that eventual death can be anticipated irrespective of coexisting conditions." The Board's reliance on the aforementioned excerpt completely disregards evidence of the veteran's peptic ulcer disease. Thus, the BVA decision denying the appellant's claim for service connection for the veteran's death must be vacated and remanded for readjudication. In a case such as this where the veteran is deceased, such a remand will permit the Board to order an independent medical opinion from the Chief Medical Director or an independent medical expert, pursuant to 38 C.F.R. § 20.901(a), (d) (1993), to determine if the veteran suffered from peptic ulcer disease and, if so, whether this was a contributing cause of death.

■ Further, in *Thurber v. Brown,* 5 Vet. App. 119 (1993), the Court held that where the BVA, in rendering a decision on a claim, relies on any evidence, such as a medical treatise, developed or obtained by it subsequent to the issuance of the most recent Statement of the Case (SOC) or Supplemental SOC with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it. *Id.* at 126. In the case at hand, there is no indication that the BVA notified the appellant of the intended use of this medical treatise or offered her a reasonable opportunity to respond, and there is no question but that the Board relied heavily on the medical treatise and that there is no other basis which would make its denial of service connection plausible, *see Yabut v. Brown,* 6 Vet.App. 79, 85 (1993) (holding *Thurber* violation harmless error where record otherwise provides plausible basis for Board's conclusion). While *Colvin* and *Hatlestad* allow for reliance on medical treatises as independent support, such must be accomplished within the confines of *Thurber. See Yabut,* 6 Vet.App. at 85.

## III. CONCLUSION

Upon consideration of the record, the Secretary's motion, and the appellant's informal brief, the Court vacates the February 27, 1992, decision of the BVA and remands the case for further development, including obtaining an independent medical opinion and seeking additional records regarding the possible receipt of an informal claim for accrued benefits, for readjudication consistent with this opinion on the basis of all evidence and material of record and all applicable laws and regulations, and for issuance of a new decision supported by adequate reasons or bases. The Secretary is reminded that a remand is not "merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement.... A remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991).

Accordingly, the Secretary's motion for summary affirmance is denied and BVA decision of February 27, 1992, is VACATED and the matter is REMANDED.