**Francisco O. MAGANA, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–556.**

United States Court of Veterans Appeals.

Dec. 14, 1994.

Robert C. Rhodes, was on the brief for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Michael R. Smalls, were on the brief for appellee.

Before FARLEY, IVERS, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Korean-conflict veteran Francisco Magana, appeals a February 17, 1993, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to service connection for headaches, claimed as secondary to a service-connected residual shrapnel wound of the right-zygoma and left-maxillary areas. Record (R.) at 6–14. (The zygoma is the cheekbone; "maxillary" relates to the upper jaw. WEBSTER'S MEDICAL DESK DICTIONARY 777, 414 (1986) [hereinafter WEBSTER'S].) Each party has filed a brief. For the reasons that follow, the Court will vacate the Board's decision and remand the matter for further proceedings consistent with this opinion.

## I. Background

The veteran served on active duty in the United States Army from August 1952 to May 1954. R. at 19–20. His service medical records (SMRs) are missing and presumed destroyed. *See* R. at 70. His Department of Defense "Certificate of Release or Discharge From Active Duty" (DD Form 214) noted that in July 1953 he had received, in action, a fragment wound resulting in a "small sc[a]r" under his left eye. R. at 19.

In February 1991, the veteran filed with a Department of Veterans Affairs (VA) regional office (RO) an application for compensation or pension, stating: "I wish to establish service connection for shrapnel in my face, which is causing me severe headaches." R. at 22, 24–27. He requested that the VARO obtain his SMRs and his outpatient treatment records (OPTRs) from the Long Beach, California, VA Medical Center (MC) and schedule a VA compensation examination. R. at 22. With his application he submitted a copy of his DD Form 214. R. at 19. Later in February 1991, the RO obtained the veteran's VA OPTRs, including a January 1991 nursing entry noting a complaint of "pain r[ight] upper gums [secondary to] schrapnel [sic] per dentist". R. at 30. Later that month, the veteran was referred to the VAMC dental clinic, where physical examination revealed increased sensitivity in the right molar region and radiographic examination revealed the presence of shrapnel in that area. R. at 34. The examiner's assessments were as follows: "1) Headache not of odontogenic origin although possibly referred pain from mandib[ular] teeth[.] 2) Palpation sensitivity possibly assoc[iated] [with] shrapnel in r[ight] molar region." *Ibid.*

In February 1991, the RO obtained a hospital admission card abstract for 1953 prepared by the Army Surgeon General showing that on July 12, 1953, the veteran had been admitted for treatment of a cheek abrasion caused by an explosive projectile. R. at 48. In the report of a March 1991 VA compensation examination, Dr. Sandra Lee noted the veteran's complaint of headache and stated: "Etiology of headaches is unknown and the connection with the residual metalic [sic] fragment is also unknown. A neurological consultation is also recommended for further evaluation." R. at 62. In April 1991, a VA medical examination for disability evaluation noted the presence of a 1– to 2–mm. metallic foreign body "in the r[igh]t zygoma, l[ef]t mandibular area" (R. at 53); x-rays of the paranasal sinuses confirmed the presence of a "minute metallic fragment ... opposite the right zygoma and left mandible" and showed

"[m]oderate thickening of the mucosa of the left antrum." R. at 54. ("Mandible" is the lower jaw. "Mucosa" is the mucous membrane. An antrum is a cavity of a hollow organ or sinus. WEBSTER'S at 408, 453, 42.) According to the VA examiner, Fred Wilms, M.D., x-rays revealed two metallic foreign bodies, one in the right zygoma and one within the soft tissue adjacent to the left mandible. R. at 63. Dr. Wilms stated that "[c]areful examination of the skin and the face ... reveals thickened, oily skin but no evidence of scar." *Ibid.* According to Dr. Wilms, the veteran's private dentist had "suggested that the headaches might possibly be aggravated by" the right-zygoma fragment. *Ibid.* Dr. Wilms then noted that a VA *neurological examination had been sched*uled and made the following recommendation: "No surgery be performed in that the foreign bodies are relatively small and in my opinion are not the source of headaches. This will, however, have to be verified or not verified by careful neurologic examination." R. at 64.

According to the report of an April 29, 1991, VA *neurological examination conducted* by Kimberly Kelly, M.D., a VA neurologist, the veteran stated that while in service he had suffered shrapnel wounds to his face and that he had experienced headaches involving the right temporal area for about the last five or ten years. R. at 56. According to Dr. Kelly, he stated that he suffered major headaches, each of more than one month's duration, three to four times a year, and experienced dull aching sensations at other times. *Ibid.* Additionally, Dr. Kelly reported that he had told her that the headache pain had recently moved into the right posterior gum. *Ibid.* Dr. Kelly's examination report stated: "He has been told by his dentist that he does not have any identifiable dental problems causing his pain, but in our history we can relate that he believes he underwent extractions of maxillary molars bilaterally, approximately 7 years ago, which may have corresponded to the onset of his cephal[al]gia." R. at 59. ("Cephalalgia" means headache. WEBSTER'S at 108.) Dr. Kelly, who noted that she had examined the veteran "without benefit of the C-file", stated the following clinical impressions:

1. Five to ten-year-history of right temporal cephal[al]gia radiating into the right parietal and right vertex [top of the head, WEBSTER'S at 756] areas and more recently into the right posterior maxillary region, etiology not determined at the time of this evaluation.

Neurological examination today was unremarkable.

2. Retained shrapnel fragment, soft tissues, opposite the right zygoma and left mandible by radiographic report.

R. at 59. Dr. Kelly then wrote as follows under the heading "RECOMMENDATIONS":

It was strongly recommended to Mr. Magana that he seek further evaluation through the [VA] facility of his choice, [or] neurology clinic, including a c[omputerized] t[omography] [(CT)] scan of the brain with and without contrast as well as an electroencephalogram. He should as well have a myofascial [relating to muscle tissue, WEBSTER'S at 460, 236] examination of the head and neck in order to further evaluate if he may indeed have a myofascial pain syndrome.

*Ibid.*

In an August 1991 rating decision, the RO awarded service connection for "[r]esidual shrapnel Wound, right zygoma area and left maxillary area", rated 0% disabling, but denied service connection for headaches. R. at 71. That same month, the veteran filed a Notice of Disagreement as to the RO's denial of his headache claim. R. at 75. In November 1991, the RO received a September 1991 statement from Gary Popyak, D.D.S., a private dentist, who stated that in December 1990 he had examined the veteran following complaints of pain ·in the upper-right sinus area and that radiographic examination had revealed shrapnel in that area. R. at 84. Dr. Popyak stated that he had referred the veteran to an oral maxillofacial surgeon (and stated that surgeon's name, address, and phone number) but did not indicate whether, to his knowledge, the veteran had sought the surgeon's opinion. *Ibid.*

In December 1991, the veteran testified under oath at an RO hearing on appeal to the

BVA. R. at 94–99. He stated that he had suffered from headaches for "[m]any many years", "[o]ver ten years I suppose", and that he had not suspected a connection to his in-service shrapnel injury until December 1990 when Dr. Popyak had informed him "that might be the case, that might be the reason why". R. at 95. According to the veteran, Dr. Popyak "didn't say that it was. He just said ... that it might be the reason why I had these headaches or the toothache or whatever." *Ibid.* In a January 1992 decision here on appeal, the hearing officer denied the claim. R. at 101–02. In March 1992, the veteran's accredited representative asserted that the veteran had suffered from headaches "since his discharge from service since 1954" and that the headaches had increased in severity during the past three years. R. at 111.

In its February 17, 1993, decision here on appeal, the Board concluded that the veteran's headaches "are not proximately due to or the result of the service connected shrapnel wound." R. at 8. At the outset of its discussion, the Board determined that the claim was well grounded under this Court's opinion in *Murphy v. Derwinski,* 1 Vet.App. 78 (1990), and that the case had been adequately developed for appellate purposes. R. at 9. The Board noted that the evidence of record was negative for any complaints, treatment, or manifestations consistent with headaches for more than 35 years after discharge, and that the first objective medical evidence of headaches was Dr. Popyak's record of a December 1990 examination. R. at 13. The Board further noted that the April 1991 special VA neurological examination "was entirely within normal limits, notwithstanding the appellant's subjective complaints of headaches". *Ibid.* The Board concluded that there was "simply no objective medical evidence of record" connecting the right-zygoma and left-maxillary shrapnel fragments to the veteran's headaches, and therefore denied the claim. *Ibid.* A timely appeal to this Court followed.

## II. Analysis

Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits un-der a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). The Court has defined a well-grounded claim as follows: "A well-grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy,* 1 Vet.App. at 81. In further defining the well-grounded-claim requirement, the Court held in *Tirpak v. Derwinski,* 2 Vet. App. 609, 610 (1992), that a claim must be accompanied by supportive evidence and that such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible." Where the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is required to fulfill the well-grounded-claim requirement of section 5107(a); where the determinative issue is factual in nature, lay testimony may suffice by itself. *See Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993); *Espiritu v. Derwinski,* 2 Vet.App. 492, 494–95 (1992). The determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Grottveit, supra.*

In February 1991, the veteran presented, with his compensation application in connection with his shrapnel wound, evidence (his DD Form 214, R. at 19) that he had been wounded in action, having received a shrapnel wound under the left eye. VA then had in its possession competent medical evidence that the veteran still had shrapnel in the area of his cheek (the January 1991 VA OPTR report, R. at 34). Accordingly, the veteran's claim was well grounded because there was evidence both of an injury incurred in service and a current condition—shrapnel in his cheek—arising therefrom. Accordingly, pursuant to section 5107(a), VA then had the duty "fully and sympathetically [to] develop the veteran's [well-grounded] claim to its optimum before deciding it on the merits." H.R.Rep. No. 100–963, 100th Cong., 2d Sess. 13, *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795 (quoted in *Flynn v. Brown,* 6 Vet.App.

500, 503 (1994)). When the veteran raised the issue of pain (described as headache) as a consequence of his in-service shrapnel injury and still-lodged shrapnel, those assertions of pain provided a focus for the duty to assist, and the Board's denial of the veteran's claim was premature, given the clear need to conduct further medical testing (including the CT scan, electroencephalogram, and myofascial examination that had been recommended by Dr. Kelly, R. at 59) and to attempt to locate additional dental records (including any records prepared by the oral maxillofacial surgeon to whom Dr. Popyak had referred the veteran, *see* R. at 84).

■ This is not a situation, such as was present in *Jones (Wayne) v. Brown,* 7 Vet. App. 134, 137 (1994), where the appellant was seeking an increased rating "based on his averment that [his] service-connected disease entity . . . [had] caused a new disease" and the Court held that "medical evidence of such causal relationship" was required in order for his claim to be well grounded. In the present case, pain is asserted as a consequence of the shrapnel lodged in the veteran's cheek, and VA regulations and our caselaw are very clear that pain may provide a basis for a compensable rating. *See* 38 C.F.R. § 4.40 (1993) ("functional loss . . . may be due to pain, . . . and a part which becomes painful on use must be regarded as seriously disabled); *Schafrath v. Derwinski,* 1 Vet.App. 589, 592–93 (1991) ("Under 38 C.F.R. § 4.40, functional disability due to pain may be the basis of a compensable rating.").

Accordingly, the Court will vacate the Board's decision and remand the matter to the Board so that it may further develop and readjudicate the veteran's claim. If the Board determines that the medical evidence of record is insufficient, or that the complexity of the medical evidence so warrants, it should seek an independent medical expert opinion, so that the evaluation of the disability will be a fully informed one. *See* 38 U.S.C. § 7109; 38 C.F.R. § 20.901(a), (d) (1993); *Quiamco v. Brown,* 6 Vet.App. 304, 310 (1994); *Littke v. Derwinski,* 1 Vet.App. 90, 92 (1990).

## III. Conclusion

Upon consideration of the record and the briefs of the parties, the Court vacates the February 17, 1993, BVA decision and remands the matter to the Board for prompt further development followed by readjudication and issuance of a new decision, on the basis of all material of record and applicable law and regulation, supported by an adequate statement of reasons or bases, all consistent with this opinion. *See* 38 U.S.C. § 7104(a), (d)(1); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). On remand, the appellant "will be free to submit additional evidence and argument." *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a final decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of that new decision is mailed to the appellant.

VACATED AND REMANDED.