Tore O. ARNESEN, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–189.

United States Court of Veterans Appeals.

Dec. 7, 1995.

Reconsideration Denied Jan. 25, 1996.

Tore O. Arnesen, pro se.

Mary Lou Keener, General Counsel, Atlanta, Ga.; Norman G. Cooper, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and Edward V. Cassidy, Jr., were on the brief, Washington, DC, for appellee.

Before HOLDAWAY, IVERS, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Vietnam-era veteran Tore Arnesen, appeals pro se from a September 30, 1993, decision of the Board of Veterans' Appeals (Board or BVA) denying an increased evaluation for postoperative residuals of chondromalacia with traumatic arthritis currently rated as 10% disabling for the right knee and 10% disabling for the left knee, with a combined rating of 20%. Record (R.) at 13. ("Chondromalacia" is softening of the cartilage in the knee, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 326, 1241 (27th ed. 1988).) Both parties have filed briefs. For the reasons that follow, the Court will vacate the BVA decision and remand the matter to the Board for further development and readjudication consistent with this opinion.

## I. Background

The veteran served on active duty in the U.S. Army from July 1968 to March 1970. R. at 20. An August 1967 induction medical examination report indicated "normal" for "lower extremities". R. at 22. A February 1969 service medical record (SMR) noted that the veteran had "twisted [his right] knee 3 days ago playing basketball" and physical examination revealed a "swollen" knee with "tenderness along [the] medial border". R. at 30. An orthopedic consultation report listed an impression of "[s]train[,] medial collateral ligament" of the right knee. R. at 31. A March 1969 SMR noted "persistent effusion, ... medial joint line tenderness, no instability." R. at 32. The veteran was treated with a "cylinder" cast and physical therapy exercises. R. at 36. In April 1969, a physical profile report assigned the veteran to light duty due to arthritis in the right knee and chondromalacia of the right patella. R. at 42. The veteran continued physical therapy in May and June 1969. R. at 46. He was apparently hospitalized for his knee problem at one point, and then sent to Vietnam. See R. at 20, 32, 113. In his March 1970 separation medical examination report, the space for "normal" or "abnormal" for "lower extremities" was left blank, but a physical profile of "3" was noted. R. at 58–59. An Army "Special Order[ ]" stated that he was "relieved from active duty not by reason of physical disability and transferred to the [U.S.] Army Reserve". R. at 64.

In March 1970, the veteran filed with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO), an application for compensation or pension for service connection for a right-knee condition. See R. at 94. An April 1970 VARO decision granted service connection for "chondromalacia right knee", rated at 10% disabling. Ibid. The veteran filed a May 1970 claim for service connection for a left-knee condition. R. at 96. The RO denied that claim in June 1970, stating that the veteran had submitted "no evidence of a left-knee disability". R. at 98. Neither RO decision was appealed and both became final.

A June 1971 VA orthopedic consultation report listed a diagnosis of "[r]esiduals of previous injury to his knee, possible chondromalacia" (R. at 108), and a contemporaneous x-ray report indicated "a suggestion of some reactive response in the intercondylar spine of the tibia on the right side" and possible "patellar tendon swelling on the left" (R. at 111). In March 1975, a VA medical examination report showed a diagnosis of "[r]esiduals of right knee injury, chondromalacia by history" (R. at 118), and a contemporaneous x-

ray report noted "mild degenerative changes of both knee joints" (R. at 120). A May 1977 VA orthopedic consultation report noted an impression of "[m]ild chondromalacia of the patellae bilaterally, the right being greater than the left" and "[m]ild generalized degenerative arthritis of the right knee". R. at 122.

An arthroscopic surgical procedure on the veteran's left knee in January 1982 revealed a medial meniscus tear and chondromalacia of the patella. R. at 129. A June 1982 RO decision denied service connection for his left-knee condition and continued the 10% rating for his right-knee disability. R. at 132. The veteran appealed to the BVA. *See* R. at 135. In a September 1982 hearing at the RO, he testified under oath that during service his right knee would lock and swell and the left knee, although it did not lock, would "constantly ache[ ]". R. at 141–42. He also testified that his May 1970 claim for service connection was evidence of a left-knee condition within a one-year presumption period, and that his current condition of chondromalacia of the patella of the left knee was the same as the condition he had suffered in service. R. at 143.

A July 1983 BVA decision denied service connection for a left-knee disorder, including arthritis, stating that SMRs were negative for left-knee complaints or treatment, and that merely filing a compensation application within one year after service did not demonstrate manifestation of arthritis to 10% in the left knee. R. at 178–80. The Board noted that the first medical evidence of arthritis in the left knee was in 1975. R. at 179. The veteran asked the RO to locate a letter from a private physician, Dr. Bender, that he had submitted to "Selective Service in Boston, Massachusetts" before his induction into the Army. R. at 168; *see also* R. at 182. A February 1984 letter from the BVA Chairman informed the veteran that no preinduction letter from a private physician was in his file. R. at 192. In September 1984, the veteran informed the BVA that he did not have the original or a photocopy of the preinduction letter from Dr. Bender, but he provided a copy which he stated had been handwritten by his mother. R. at 205. This copy

stated that in December 1965 the veteran had had a biopsy of the right humerus with a diagnosis of "myositis ossificans" and thereafter had been treated for that condition until April 1968 and he had also been "treated for multiple sprains of ankles and knees and ha[d] most recently been treated for what appears to be either synovitis or early rheumatoid arthritis of his knee". R. at 92. The veteran also submitted a June 1984 letter from Dr. Bender, which stated that he did "not have any records that go back to the time that you were a patient of mine", but that "[t]o the best of my memory, I did treat you for knee difficulties.... [and] you did have chondromalacia; and I did advise you that this was likely to gradually progress and would probably limit you with regard to squatting, kneeling, and climbing, on a gradually increasing basis." R. at 201. In October 1985, a BVA reconsideration decision affirmed the July 1983 Board decision. R. at 221.

The veteran attempted to reopen his claim for a left-knee disability in February 1986. R. at 228. A May 1986 RO decision denied reopening. R. at 230. The veteran testified under oath at a September 1986 RO hearing that his bilateral knee condition had existed prior to service and had been exacerbated during service by basic training, playing basketball, and walking through mud in Vietnam while carrying a back pack. R. at 245, 254. He also testified that if complete in-service hospital records were obtained they would show complaints of left-knee pain. R. at 246. He submitted a March 1987 letter from a private physician stating that the veteran had bilateral "patello-femoral arthritis" and "early degenerative arthritic changes", and concluding that he "does have pre-existing injuries from college and the time period when he was in the service." R. at 283. The veteran also submitted an April 1987 letter from a private orthopedist stating that if the veteran had had a history of knee problems before service, had increased knee problems during service, and "three years after he was drafted he left the army and x-rays then did show degenerative arthritis", then the physician "would say that it is possible that the activities which he underwent during military

service might have been a contributing factor to his degenerative arthritis." R. at 284.

The veteran testified under oath in a June 1987 hearing at the RO that after service he had had an injury to his right knee that required surgery. R. at 302 (*see* R. at 129). An August 1987 VA x-ray report listed an impression of "[o]steoarthritis of the knees with multiple interarticular loose bodies, right knee." R. at 316. VA arthritis clinic reports noted bilateral chondrocalcinosis, by x-ray, in August 1987, and degenerative joint disease and "CPPD [calcium pyrophosphate dehydrate] of knee [joint]" in October 1987. R. at 324, 326. ("CPPD disease" is a crystal deposition arthritis that may simulate gout, STEDMAN'S MEDICAL DICTIONARY 493 (26th ed. 1995).) A December 1987 private x-ray report showed "[p]atellofemoral osteoarthritis, bilateral." R. at 338.

In January 1988, a BVA decision concluded that no new factual basis had been demonstrated for a grant of service connection for a left-knee condition, and that "there was no in[-]service exacerbation or any acquired pathology related to the veteran's left knee in service or within the first post service year". R. at 351–52. The BVA decision rejected the private medical opinions submitted by the veteran because they were "based on a medical history given by the veteran" and "did not change the underlying facts upon which the prior Board decision was based." R. at 351.

The veteran stated in a June 1988 letter to the BVA Chairman that the 1983 BVA decision had denied service connection for a left-knee condition on the ground that no such condition had been incurred in service, whereas his contention was that he had a "disability resulting from aggravation to a *pre-existing* condition." R. at 367. At a September 1990 RO hearing, the veteran, again attempting to reopen his case, testified under oath that the 1987 arthritis clinic reports were new and material evidence to reopen his claim for aggravation of a left-knee disability because they showed that he had generalized arthritis and bilateral "CPPD disease which is pseudo-gout". R. at 430–31. He asserted that evidence of a generalized joint problem contradicted the 1983

BVA finding that his right-knee disability was due to trauma and was unrelated to his left-knee disability. R. at 437. He stated that he had had multiple surgeries on both knees. R. at 438. He also testified that, because the BVA had violated due process in its handling of his 1986 attempt to reopen his claim, the current adjudication was a continuation of that claim and not a new attempt to reopen. R. at 452.

In November 1990, a VA examination report noted that the range of motion in both knees was "limited" to "0–115 degrees" (R. at 477), and gave a diagnosis of:

1. Knee, right: Chondromalacia, status post surgery times three, healed and stable, with mild discomfort and moderate limitation of function and motion as described. Moderate osteoarthritis noted on x-ray.

2. Knee, left: Chondromalacia, status post surgery times 2 for medial meniscal tear, and patellar tendon repair, healed and stable, with mild discomfort and moderate limitation in function and motion as described.

R. at 478. Scars on his knees were reported as nontender, with no ulceration or attachment. R. at 480. In December 1990, the RO awarded service connection for chondromalacia of the left knee with traumatic arthritis, rated 10% disabling, with a combined disability rating of 20% for both knees, effective from February 1986, the "date [the] claim [is] considered reopened with continuous prosecution". R. at 486.

In a January 1991 letter to the RO, the veteran questioned the characterization of his disability as traumatic arthritis, the effective date of the award, and the assigned degree of disability, and he asked for interest or a cost-of-living adjustment on the retroactive part of the award. R. at 488–90. The RO issued a confirmed rating decision in March 1991 (R. at 494), and the veteran submitted a May 1991 letter which the RO interpreted as a Notice of Disagreement (R. at 498). The RO sent the veteran a September 1991 Statement of the Case (SOC). R. at 504–09. The RO also considered the May 1991 letter to be a claim for service connection for generalized degenerative osteoarthritis and "[p]seudog-

out (CPPD disease)" and an increased rating for his bilateral knee condition, and denied those claims in a September 1991 decision. R. at 511–13. He filed a February 1992 VA Form 1–9 (Substantive Appeal to the BVA) which stated that he had never received an SOC. R. at 530–31.

At an April 1992 RO hearing on appeal to the BVA, the veteran testified under oath as follows: (1) 38 U.S.C. § 1154(b) should have been considered in his appeal; (2) his preservice condition of generalized arthritis was aggravated by service; (3) his bilateral knee condition was a result of his generalized arthritis and probably not due to trauma; (4) the effective date for his left-knee disability rating should be earlier than 1986; (5) the disability ratings for his knees should be higher; and (6) his retroactive payments should include interest or an inflation adjustment. R. at 538–68. An October 1992 hearing officer's decision denied increased ratings, an earlier effective date, and service connection for generalized arthritis. R. at 591.

In a January 1993 BVA hearing, the veteran repeated under oath most of the contentions he had made at the April 1992 RO hearing, and stated that the disability rating for his right knee should be at least 20% and the left-knee rating should be 10 to 20%. R. at 621–43. He also submitted a written chronological history (R. at 608–12) and a statement that he "waive[d] [RO] consideration of the additional evidence and records which I am submitting to the member of the [BVA] travel board" (R. at 603). A February 1993 letter from the RO to the veteran informed him that his claims file had been sent to the Board before receipt of his January 1993 letters (these letters do not appear in the record), and asked if the veteran wanted the file returned to the RO to deal with the questions of "past payments and disability dates" or if he wanted his appeal to proceed. R. at 646. He responded in March 1993 that "I would rather delay my appeal . . . than for you to leave my questions unanswered" and requested that the RO should "go ahead and retrieve my file so you can respond." R. at 648. The RO apparently did not honor this request.

In July 1993, the BVA wrote the veteran that it proposed to rely on parts of the VA Physician's Guide for Disability Evaluation Examinations [hereinafter the Guide] and that a "period of 60 days from the date of this letter is allowed for you to submit any additional argument or comment." R. at 651–66. In a September 1993 letter to the BVA, the veteran asserted that (1) he wanted a decision from either the RO or the BVA as to the issue of the amount of retroactive payments; (2) he wanted to be present at the decision on his BVA appeal; and (3) he had had insufficient time to present his case at the January 1993 BVA hearing. R. at 668. A handwritten note on this letter states: "Correspondence received more than 90 days after Feb[ruary 19]93 letter to vet[eran] notifying him of case being certified to BVA. 'Good cause' for another personal hearing *not* shown." *Ibid.*

The September 30, 1993, BVA decision here on appeal determined that the claims for increased ratings for the veteran's knees were well grounded and that the November 1990 VA examination was adequate for rating purposes, and denied increased ratings for his bilateral knee condition. R. at 10. The decision did not address the issues of earlier effective date, service connection for generalized arthritis, or interest on retroactive payments. R. at 13–14. A timely appeal to this Court followed.

## II. Analysis

### A. Issues Not Adjudicated by the Board

The BVA referred to the RO the issues of an earlier effective date for the veteran's left-knee disability, service connection for aggravation of generalized arthritis (including CPPD disease), and an inflation or cost-of-living supplement to the retroactive award for his left-knee disability. R. at 8. As the Secretary noted in his brief, the issues of service connection for generalized arthritis and an earlier effective date for the left-knee award were adjudicated by the RO and raised by the veteran in his Form 1–9 Appeal (R. at 531) and his sworn testimony before the BVA (R. at 635, 639, 642), but were not decided by the Board. Brief (Br.) at 16–17; R. at 13. The Secretary recommended that the Court remand as to these two claims so

that the Board can adjudicate them. The Secretary is correct. In addition, in its March 1991 decision, the RO stated that "[t]here are no provisions under the law for interest payments" (R. at 496), and the veteran was so notified (R. at 493); the veteran also raised this issue in his sworn testimony before the BVA (R. at 643). Each of these three issues was raised by the appellant in his brief. Br. at 3.

▆▆ Because the RO had decided these three issues and they had been duly appealed to the BVA, the BVA should have considered them, rather than referred them to the RO. "Given the nonadversarial setting of the [VA] claims adjudication process", *Isenbart v. Brown,* 7 Vet.App. 537, 541 (1995), VA is required to construe liberally all submissions by a claimant. *See EF v. Derwinski,* 1 Vet. App. 324, 326 (1991); *Myers v. Derwinski,* 1 Vet.App. 127, 130 (1991). The appellant has challenged in this Court the Board's failure to address these issues and has asked the Court to address them. However, the Court has no factual basis for judicial review and will remand for the BVA to address in the first instance the issues of an earlier effective date for the veteran's left-knee disability, service connection for aggravation of generalized arthritis (including CPPD disease), and an inflation or cost-of-living supplement to the retroactive award for his left-knee disability. *See Servello v. Derwinski,* 3 Vet. App. 196, 200–01 (1992) (remanding claim to BVA where it had not evaluated relevant evidence); *Myers, supra.* This Court is not generally an initial trier of fact. *See* 38 U.S.C. § 7261(c) ("In no event shall findings of fact made by the Secretary or the [BVA] be subject to trial de novo by the Court."); *Landicho v. Brown,* 7 Vet.App. 42, 48 (1994); *Webster v. Derwinski,* 1 Vet.App. 155, 159 (1991). The Board also should consider 38 C.F.R. § 19.31 (1994) as to the adequacy of the SOC furnished to the appellant.

▆▆ The veteran also asserts that the BVA should consider 38 U.S.C. § 1154(b) in determining if he had preexisting arthritis that was aggravated by service. Br. at 7; Reply Br. at 3. Section 1154(b) relaxes evidentiary standards so that "satisfactory lay or other evidence" can be used by combat veterans to demonstrate incurrence or aggravation of a disability in service. *See Caluza v. Brown,* 7 Vet.App. 498, 508 (1995). There is evidence in the record indicating that the veteran was in combat. *See, e.g.,* R. at 20, 245. On remand, the Board should consider the applicability of section 1154(b) to the veteran's claim for service connection for in-service aggravation of generalized arthritis.

## B. Increased Rating for Bilateral Knee Disability

▆▆ A claim for an increased rating is a new claim, not subject to the provisions of 38 U.S.C. §§ 5108, 7104(b) prohibiting reopening of previously disallowed claims except upon new and material evidence since the current rating was assigned. *See Proscelle v. Derwinski,* 2 Vet.App. 629, 631–32 (1992). A claim for an increased rating is generally well grounded when an appellant indicates that he has suffered an increase in disability. *Ibid.* The veteran has asserted that he should be awarded a higher rating for his bilateral knee disorder, currently rated at 20% disabling. The Court holds that the claim is well grounded.

▆▆ The diagnostic code under which the veteran's knee disability is currently rated is 38 C.F.R. § 4.71a, diagnostic code (DC) 5010 (1994) (disability due to traumatic arthritis), which provides that traumatic arthritis confirmed by x-ray will be rated under DC 5003 (disability due to degenerative arthritis). The veteran asserts that his knee condition is due (in part) to osteoarthritis and that he does not have traumatic arthritis. *See, e.g.,* R. at 437, 488–90, 530–31; Br. at 11. However, because the rating procedure for both disorders is identical, any error by the Board in characterizing the veteran's disability as traumatic arthritis rather than osteoarthritis is nonprejudicial error. Where an appellant has not been harmed by an error in a Board determination, the error is not prejudicial. *See* 38 U.S.C. § 7261(b) ("Court shall take due account of the rule of prejudicial error"); *Yabut v. Brown,* 6 Vet.App. 79, 83 (1993); *see also Godwin v. Derwinski,* 1 Vet.App. 419, 427 (1991).

Ratings under DC 5003 are based on limitation of motion of the affected joints, unless the rating for limitation of motion would be noncompensable, in which case a 10% rating will be assigned for each major joint involved. Limitation of motion of the knees is rated under DCs 5260 (limitation of flexion) and 5261 (limitation of extension). The BVA noted that the veteran's range of motion was given as 0° to 115° in the November 1990 VA examination report, and that, pursuant to 38 C.F.R. § 4.71, the "normal range of motion of the leg and knee is from 0 to 140 degrees." R. at 11. The BVA then concluded: "Our longitudinal review of the record indicates that the veteran's post-operative right knee disorder is manifested principally by a loss of 35 degrees of flexion of the right leg with no loss of extension" and that the left knee was similarly affected. R. at 11–12.

The veteran's knee disability has also been diagnosed as chondromalacia. R. at 42, 118, 122, 478. There is no rating code for chondromalacia of the knees. *See* DCs 5256 to 5263. "When an unlisted condition is encountered it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous." 38 C.F.R. § 4.20. The Board's selection of a DC can be set aside only if the selection is arbitrary and capricious. *See Butts v. Brown,* 5 Vet.App. 532, 539 (1993). There is no evidence in the record to indicate that the veteran's condition is more closely analogous to any other condition of the knees than to arthritis, and there is considerable evidence that his condition is associated with arthritis. *See, e.g.,* R. at 42, 92, 120, 122, 283. Therefore, the Court holds that the BVA was not arbitrary and capricious in rating the veteran's bilateral knee disability as arthritis.

■■■■■■ The veteran asserts that the Board should have rated his bilateral knee disability as aggravation of a preexisting condition rather than direct service connection. Br. at 8–9. Even if the veteran is correct that he had arthritis before service, any failure by the BVA to adjudicate the issue of in-service aggravation of his bilateral knee disability would be nonprejudicial error (*see* 38

U.S.C. § 7261(b); *Yabut* and *Godwin,* both *supra*), because his current rating is based on evaluation of the total extent of his knee disabilities. Thus, evaluating his knee disabilities as an aggravation of a preexisting condition could only decrease, not increase, his disability rating. *See* 38 U.S.C. § 1153 (aggravation will be found where there is an increase in disability during service, "unless there is a specific finding that the increase in disability is due to the natural progress of the disease."); *see also* 38 C.F.R. § 3.306. A disability rating for aggravation is derived by reducing the current rating of the disability by the amount of the disability (as it would have been rated) at entry into service. *See Hensley v. Brown,* 5 Vet.App. 155, 161 (1993) (citing 38 C.F.R. § 4.22).

■■■■■■ The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Masors v. Derwinski,* 2 Vet.App. 181, 188 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza,* 7 Vet.App. at 506; *Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Abernathy v. Principi,* 3 Vet.App. 461, 465 (1992); *Gilbert, supra.*

■■■■ The BVA decision noted that the normal range of motion of the knee is 0° to 140°, cited the November 1990 VA medical examination report result of a range of motion of 0° to 115°, and concluded that limitation of flexion was 35°. The BVA did not explain how it arrived at the conclusion that the veteran's bilateral limitation of flexion was 35°, and it is not the Court's role to speculate on how this conclusion was reached (the Court notes that 140 minus 115 yields 25, not 35). Hence, because the Board's

statement of reasons or bases was incomplete the Court cannot find that it was adequate. *See Simon, Masors,* and *Gilbert,* all *supra.* On remand, the BVA must explain the basis for its determination as to the veteran's limitation of range of motion, specifying its findings in the terms used in DCs 5260 and 5261 (extension and flexion limitation), *see Massey v. Brown,* 7 Vet.App. 204, 208 (1994) (Court remanded for readjudication applying and explaining rating in terms of criteria in applicable DC).

The veteran argues that his knee disability is partly or totally due to "crystal arthritis", not solely to degenerative arthritis (R. at 430–31; Br. at 12), and that there are diagnoses in the record of CPPD disease of the knees (R. at 324, 326). The rating schedule provides in DC 5009 that "Arthritis, other types" will be rated "as rheumatoid arthritis". 38 C.F.R. § 4.71a, DC 5009. The BVA did not discuss the CPPD disease diagnoses in the record, and did not address the veteran's contentions that this condition represents a different type of arthritis. On remand, the Board should address these issues as well. *See Godfrey v. Brown,* 7 Vet.App. 398, 408–09 (1995).

As noted, the ratings in DCs 5260 and 5261 are given in terms of extension and flexion. The Board stated that it had considered pain, but it did not specify how it evaluated the veteran's complaints of periodic flare-ups in terms of range of motion (extension and flexion). R. at 6–7. On remand, the Board should consider the effect of pain on range of motion, and should seek medical evidence on this point if necessary. *See DeLuca v. Brown,* 8 Vet.App. 202, 205–07 (1995); 38 C.F.R. § 20.901.

### C. Fair Process

In *Thurber v. Brown,* the Court held that when the BVA relies on evidence obtained after the issuance of the most recent SOC or supplemental SOC, a claimant must be offered a reasonable opportunity to "respond" to that evidence. *Thurber,* 5 Vet. App. 119, 126 (1993). In *Austin v. Brown,* the Court expanded on *Thurber* and expressly held that the "response to which the claimant was entitled, as contemplated by *Thurber,* was not limited to argument or comment, but also included the claimant's right to submit additional evidence". *Austin,* 6 Vet.App. 547, 551 (1994). In the instant case, the BVA notified the veteran, after the SOC was issued, that it proposed to rely on the GUIDE in its adjudication of his case, and offered him the opportunity to present only additional "argument or comment". The BVA did not state that the veteran could offer additional evidence.

The Secretary argues that the *Austin* fair-process requirement does not apply to the Board's reliance on the GUIDE because that text is not evidence, but merely "a guide to VA doctors providing generalized direction for the proper conduct of disability examinations". Br. at 15 (quoting *Allin v. Brown,* 6 Vet.App. 207, 214 (1994)). The Secretary thus seems to be arguing that the GUIDE is analogous to a law or regulation, where the appellant would be charged with notice, rather than to a treatise or medical examination. However, *Allin* held that the GUIDE was "neither a statute nor a regulation". *Ibid.* Because the GUIDE is not contained in any statute and has not been published in the Federal Register, the appellant cannot be charged with notice of it. *See Lyman v. Brown,* 5 Vet.App. 194, 196–97 (1993); *Fugere v. Derwinski,* 1 Vet.App. 103, 107–08 (1990). Therefore, the Board should have provided the appellant the opportunity to present additional evidence, not just argument or comment, in response to the Board's proposed reliance on the GUIDE. *See Thurber* and *Austin,* both *supra.*

The Secretary further argues that even if the Board should have allowed the appellant the opportunity to present additional evidence, the fact that it did not do so was nonprejudicial error in this case because, despite the Board's notice of proposed reliance, "the BVA merely stated in its decision that the 1990 VA orthopedic examination was conducted in accordance with the GUIDE (R. 10) and did not otherwise rely on it in its decision". Br. at 15. The Board stated that the "normal" range of motion of the knee joint is 0° to 140°. This information appears in the GUIDE section expanding upon 38 C.F.R. § 4.71 (GUIDE 2.13 to 2.18), but is not stated

expressly in 38 C.F.R. § 4.71 itself (although it would appear to be implied in the figure that appears under that section). The Secretary may be correct that the Board did not rely on the GUIDE in its decision, but the Court is unable to so conclude in light of the Board's stated intention to so rely. In any event, because the case is being remanded on other grounds, the Board will have to comply with the fair process requirements of *Austin* and offer the appellant the opportunity on remand to present evidence in rebuttal if it proposes to rely on evidence developed after the issuance of the most recent SOC.

The appellant's brief raises two further fair-process issues: (1) The entire BVA panel should have been present at his hearing rather than just one Board member; and (2) he was not allowed adequate time to present his case at his January 1993 BVA hearing. As to the first issue, 38 U.S.C. § 7102(b) provided at that time: "[H]earings shall be held by such member or members as the Chairman may designate". Thus, the statute provides that one Board member may conduct a hearing. As to the second issue, 38 U.S.C. §§ 7104(a) and 7105(a) provide for hearings for claimants who appeal to the BVA. Section 7104(a) provides that the Board "shall decide any ... appeal only after affording the claimant an opportunity for a hearing", and section 7105(a) provides that each appellant "will be accorded hearing and representation rights pursuant to the provisions of this chapter and regulations of the Secretary." Pursuant to 38 C.F.R. § 20.700(b) (1994), the presiding Board member "may set reasonable time limits for the presentation of argument and may exclude documentary evidence, testimony, and/or argument which is not relevant or material to the issue, or issues, being considered or which is unduly repetitious." The September 30, 1993, Board decision did not address the issue, although the veteran specifically raised it to the Board, of the adequacy of the time previously provided for the veteran's BVA hearing, and on remand the Board will have an opportunity to address that issue, including deciding whether to provide him with additional hearing time if he requests it.

### III. Conclusion

Upon consideration of the record and the submissions of the parties, the Court vacates the September 30, 1993, BVA decision and remands the matter for expeditious further development, if indicated, and readjudication, on the basis of all applicable law and regulation, and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 7104(d)(1), 7261; 38 C.F.R. § 4.71a; *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims "remanded" by BVA or the Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

VACATED AND REMANDED.