Citation Nr: 1513864 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 12-05 356 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES
 
1. Entitlement to a rating in excess of a combined 10 percent for disabilities of the right knee prior to June 15, 2013.
 
2. Entitlement to a rating in excess of a combined 20 percent for disabilities of the right knee between June 15, 2013 and August 23, 2014.
 
3. Entitlement to an evaluation in excess of a combined 30 percent for disabilities of the right knee from August 23, 2014.
 
 
REPRESENTATION
 
Appellant represented by: Tennessee Department of Veterans' Affairs
 
 
ATTORNEY FOR THE BOARD
 
M. Nye, Associate Counsel

INTRODUCTION
 
The Veteran served on active duty from July 1993 to February 1997.
 
This case initially came to the Board of Veterans' Appeals (Board) from a July 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee which granted entitlement to service-connection for a right knee anterior cruciate ligament tear and awarded a 10 percent disability rating under 38 C.F.R. § 4.71a, Diagnostic Codes 5260-5010 (2014). 
 
After the Veteran appealed the initial rating assigned the RO in September 2013 granted compensation for right knee instability and assigned a separate 10 percent rating based on 38 C.F.R. § 4.71a, Diagnostic Code 5257. This rating decision increased the Veteran's combined rating for his right knee disorders to 20 percent. 

In an October 2014 rating decision VA granted entitlement to service connection for a dislocated right knee semilunar cartilage, and assigned a 20 percent rating under 38 C.F.R. § 4.71a, Diagnostic Code 5258 ("Cartilage, semilunar, dislocated, with frequent episodes of 'locking,' pain, and effusion into the joint"). 

In May 2014, the Board remanded the case, and in an October 2014 rating decision VA increased the combined disability rating to 30 percent. As this decision will explain, the RO substantially complied with the Board's remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 
 
A videoconference hearing was scheduled in March 2014. By letter, the Veteran was notified of the hearing date, but he did not appear. The Veteran has not indicated to VA the reason for his absence. Nor has he asked for the hearing to be rescheduled. The Board therefore considers the Veteran's hearing request to be withdrawn. See 38 C.F.R. § 20.704(d) (2014).
 

FINDINGS OF FACT
 
1. Throughout the appeal period, right knee arthritis has manifested by limited motion, pain and X-ray evidence of arthritis, but not by a compensable limitation of motion under either Diagnostic Code 5260 or 5261.
 
2. With reasonable doubt resolved in favor of the Veteran, slight right knee recurrent subluxation or lateral instability has existed throughout the appeal period.
 
3. A dislocated right knee semilunar cartilage with frequent episodes of 'locking' and pain has been ascertainable since August 23, 2014, but not earlier. 
 
 
CONCLUSIONS OF LAW
 
1. The criteria for a combined evaluation of 20 percent for right knee disabilities prior to June 15, 2013 have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107, 5110 (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010, 5260, 5257 (2014). 
 
2. The criteria for a combined evaluation in excess 20 percent for right knee disabilities prior to August 23, 2014 have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5010, 5257, 5260, 5261.
 
3. The criteria for a combined evaluation in excess of 30 percent for right knee disabilities from August 23, 2014 have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107, 5110; 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5258.
 
 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
 
Veterans Claims Assistance Act (VCAA)
 
As a preliminary matter, the Board notes that the issues resolved in this decision concern the appeal of an initial rating assigned following an award of service connection. Under these circumstances, additional notice pursuant to 38 U.S.C.A. 5103(a) is not required, and any prior defect in the notice is not prejudicial. See Dunlap v. Nicholson, 21 Vet. App. 112, 116-17 (2007); VAOPGCPREC 8-2003. VA has fulfilled its duty to assist the Veteran by obtaining identified and available evidence needed to substantiate his claim, and, as warranted by law, by arranging four VA examinations. There is no evidence of any VA error in notifying or assisting the Veteran which reasonably affects the fairness of this adjudication. 38 C.F.R. § 3.159.
 
Analysis
 
Disability evaluations are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. An evaluation of the level of disability present must also include consideration of the functional impairment of the Veteran's ability to engage in ordinary activities, including employment. 38 C.F.R. § 4.10. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7.
 
The Veteran's entire history is to be considered when making disability evaluations. See 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1995).
 
Where an award of service connection for a disability has been granted and the assignment of an initial evaluation for that disability is disputed, separate evaluations may be assigned for separate periods of time. In other words, the evaluations may be staged. See Fenderson v. West, 12 Vet. App. 119, 127 (1999). Here, as explained below, a combined 20 percent rating prior to August 23, 2014 and a combined 30 percent rating from August 23, 2014 are appropriate.
 
While on active duty the Veteran injured his right knee suffering a torn anterior cruciate ligament and needing reconstructive surgery. Shortly after he filed the present claim, the RO arranged a VA medical examination to help determine the severity of the Veteran's symptoms. The examiner reviewed service treatment records and personally examined the claimant. In a June 2010 report the examiner's impression was status post right knee anterior cruciate ligament reconstruction, status post right knee partial lateral meniscectomy with trochlear groove chondroplastic, and mild osteoarthritis. 
 
In July 2010, VA granted entitlement to service connection and awarded a 10 percent disability rating after applying 38 C.F.R. § 4.71a, Diagnostic Codes 5010-5260. See 38 C.F.R. § 4.27 (use of hyphenated diagnostic codes). Under Diagnostic Code 5010, traumatic arthritis is rated under Diagnostic Code 5003, applicable to degenerative arthritis. Diagnostic Code 5003 requires VA first to evaluate degenerative arthritis established by X-ray findings on the basis of limitation of motion under the appropriate Diagnostic Code for the specific joint involved. "Limitation of motion of the knees is rated under Diagnostic Codes 5260 (limitation of flexion) and 5261 (limitation of extension)." Arnesen v. Brown, 8 Vet. App. 432, 439 (1995) 
 
According to the June 2010 VA examination report, the Veteran's right knee extension was to zero degrees and right knee flexion was to 135 degrees. The record also includes more recent range of motion test results. At a June 2013 examination right knee flexion ended at 110 degrees and objective evidence of painful motion began at 110 degrees. Extension was to zero degrees. 

Pursuant to the Board's May 2014 remand instructions, the RO arranged two additional VA examinations, the first in June 2014, and the second in August 2014. Of these examinations, only the second examiner recorded the results of range of motion tests in his report. According to the August 2014 VA examiner, the Veteran had right knee flexion to 130 degrees, with objective evidence of painful motion beginning at 125 degrees. Right knee extension was to zero degrees. 
 
Diagnostic Code 5260 provides ratings based upon the limitation of flexion in the leg. A 10 percent rating is assigned when flexion is limited to 45 degrees. A 20 percent rating is assigned when flexion is limited to 30 degrees. 38 C.F.R. § 4.71a. Given the fact that at no time was flexion ever limited to 45 degrees, it follows that a compensable rating based on a limitation of flexion is not in order. 

Furthermore, Diagnostic Code 5261 provides ratings based upon the limitation of extension in the leg. and that Code provides a 10 percent rating is assigned when extension is limited to 10 degrees. A 20 percent rating is assigned when extension is limited to 15 degrees. Given that at no time was extension ever limited to 10 degrees, it follows that a compensable rating based on a limitation of extension is not in order. 

Notwithstanding the foregoing, the Board agrees with the initial assignment of a 10 percent rating based on painful limited right knee motion with arthritis. Lichtenfels v. Derwinski, 1 Vet. App. 484, 488 (1991) (A 10 percent rating is warranted when painful motion is non-compensable under the appropriate diagnostic code and arthritis is established by X-ray findings). Nevertheless, there is no basis for a higher rating for left knee arthritis.
 
Because this disorder involves the assignment of a rating for a musculoskeletal disability rated, at least partly, based on limitation of motion, VA must consider the extent to which the Veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated, such as functional impairment when the claimant's symptoms are at their most prevalent ("flare-ups") due to pain, weakness, premature or excess fatigability and incoordination. See DeLuca v. Brown, 8 Vet. App. 202, 204-07 (1995); 38 C.F.R. §§ 4.40, 4.45, 4.59. The June 2010 examiner indicated that it was "conceivable" that the Veteran experiences additional pain during flare-ups, but he declined to estimate the extent of any additional functional limitation due to pain, on the grounds that such an opinion would be speculative. According to the June 2013 examiner, the Veteran reported that pain during flare-ups made it difficult for him to walk or bend. 
 
In May 2014, the Board found that the June 2013 examination was inadequate to apply 38 C.F.R. § 4.40 and DeLuca. The Board noted that, in response to the question "Does the Veteran have other pertinent physical findings, complications, conditions, signs and/or symptoms related to any conditions listed in the Diagnosis section above?" the examiner checked a box indicating "Yes" but he did not answer the related request for an explanation: "If yes, describe (brief summary)." Second, the Board found that the June 2013 examiner did not estimate additional functional loss associated with flare-ups in terms of additional loss in range of motion. 
 
As explained above, the RO arranged for two post-remand medical opinions. The first examiner wrote a brief report in June 2014. On the subject of flare-ups, he wrote, "During flare ups [patient] has decreased [range of motion], also decreased ability to stand/walk for extended periods of time due to pain." 
 
The second examiner wrote a longer report in August 2014. Unlike the June 2014 report, this report recorded the results of several range of motion tests, including tests of repetitive motion. Some of these results are discussed in the application of Diagnostic Code 5003 above. In addition to measuring right knee flexion of 130 degrees, the August 2014 examiner reported that painful motion began at 125 degrees flexion. The Veteran was also able to perform repetitive use testing with three repetitions. During repetitive use testing, right knee flexion ended at 125 degrees. The August 2014 VA examiner opined that the Veteran did not have additional limitation in range of motion of the knee and lower leg following repetitive use testing. He also measured the muscle strength of the Veteran's knee according to a five point scale. With respect to right knee flexion and right knee extension, the examiner reported that the Veteran performed the exercises with normal muscle strength, i.e., he performed the exercises with a strength of 5 on a scale of 1 through 5 - 1 being the weakest ("no muscle movement") and 5 being the strongest ("normal strength"). In the "Remarks" section of his report, the VA examiner wrote that he found "no evidence of flare-ups leading to functional disability."
 
On the issue of additional functional impairment due to flare-ups, pain, weakness, lack of endurance and incoordination pursuant to 38 C.F.R. § 4.40 and DeLuca, the Board finds that the opinion of the August 2014 VA examiner is entitled to substantial weight. The August 2014 VA examiner deserve greater weight than the August 16, 2014 report, in part because, unlike the June 2014 report, the August report is supported by contemporaneous test results which tend to explain the examiner's conclusions. See Nieves-Rodrigeuz v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning). The June 2014 report, by comparison, is vague on the extent of the Veteran's decreased functional ability, if any, due to flare-ups.
 
The RO substantially complied with the Board's prior remand instructions. Although neither examiner explicitly equated the Veteran's claimed additional functional difficulties due to pain with additional range of motion, the August 2014 VA examiner substantially answered the questions posed by the Board's remand instructions by explaining that painful motion begins at 125 degrees of right knee flexion and that this continued to be the limit of the Veteran's range of motion during repetitive exercises. Reading the August 2014 VA examination report as a whole, see Monzingo v. Shinseki, 26 Vet. App. 97, 106 (2012) ("the medical report must be read as a whole"), it is clear that, even when the Veteran experienced painful motion with repetitive use, the degree of functional impairment did not approximate the criteria for a higher rating for arthritis based on limited range of motion under 38 C.F.R. § 4.71a, Diagnostic Code 5003. In other words, because additional functional loss in the Veteran's knee due to pain was not severe enough to limit flexion to 45 degrees or extension to 10 degrees, let alone the limitations required for 20 percent ratings under Diagnostic Codes 5260 and 5261, the appellant's right knee arthritis does not warrant a higher rating. Moreover, none of the medical reports mention disuse atrophy or incoordination on movement.
 
In applying Diagnostic Code 5003 and DeLuca, the Board has considered the lay statements of the Veteran. The Veteran reported that he experienced pain and that his knee "locks up." He also said that his knee condition made his employment as a truck driver more difficult, because he experienced pain entering and leaving the truck and he needed to use a knee brace. The Board finds these statements to be credible and acknowledges that the Veteran experiences pain. But pain, standing alone, does not entitle a claimant to a higher disability rating based on a diagnostic code based in part on limited range of motion. The Court has held, however, that it is not painful motion in and of itself that warrants certain levels of compensation; rather it is the functional loss caused by the painful motion. Mitchell v. Shinseki, 25 Vet. App. 32, 38-43 (2011). Here, on the question of functional loss due to pain, the objective medical findings of the August 2014 VA examination report are entitled to greater weight than the claimant's lay statements. The Veteran demonstrates no actual or functional limitation of motion outside the bounds of a 10 percent rating under 38 C.F.R. § 4.71a, Diagnostic Code 5010-5060. 

The Board must now consider other diagnostic codes which could potentially apply to increase the Veteran's rating for disabilities his right knee. See Schafrath, 1 Vet. App. at 593. 

As explained above, the Veteran receives compensation for right knee instability currently rated under 38 C.F.R. § 4.71a, Diagnostic Code 5257 ("Knee, other impairment of: recurrent subluxation or lateral instability"). Under this diagnostic code, a rating of 10 percent is assigned for slight recurrent subluxation or lateral instability, a 20 percent rating is assigned for moderate recurrent subluxation or lateral instability and a 30 percent rating is assigned for severe recurrent subluxation or lateral instability. 
 
The most detailed information in the record concerning the Veteran's knee instability comes from the results of the Veteran's joint stability tests. The June 2013 VA examiner recorded the results of several such tests. Most of these test results were normal. Still, the examiner did record a result of +1 for the Lachman's stability test. As the examination report indicates, the Lachman's test is graded according to a system in which the Veteran's +1 result reflects movement of a distance between zero and 5 millimeters in displacement greater than the normal knee. A Lachman's test of +2 (5-10 millimeters greater than normal) or +3 (10-15 millimeters greater than normal) would correspond to more severe instability. The results of the Veteran's right knee posterior drawer test of instability and valgus/varus pressure test of medial-lateral instability were both normal. 

The August 2014 VA examination indicated that the results of all of the Veteran's right knee joint stability test results, including the Lachman's test, were normal. Both the June 2013 and August 23, 2014 VA examiners found no evidence of recurrent patellar subluxation or dislocation. 
 
The June 2014 examiner, however, recorded a Lachman's test of +1 and X-ray results showing "mild lateral subluxation of the patella . . . ." The Veteran also submitted the treatment records of a physician in private practice who performed knee surgery on the Veteran in 2004. These records record normal joint stability test results in March 2004 and +1 Lachman's and +1 drawer test results in June 2004. The private physician diagnosed the Veteran with lateral instability of the right knee in June 2004.
 
In rating the Veteran's knee instability under Diagnostic Code 5257, the Board considered the statements of the Veteran concerning the continuity of his symptoms since his inservice injury. On the issue of whether the Veteran's knee instability is "slight" or "moderate", the Board attaches greater weight to the 2013 and 2014 VA examination reports. According to these reports, the Veteran's joint stability was normal by most measures. The fact that his knee symptoms appeared to fluctuate between a +1 Lachman's test and normal knee stability indicate that his knee symptoms have most closely approximated the criteria for "slight" instability of the knee under Diagnostic Code 5257 throughout the appeal period. These results are also more recent than the findings of the private physician.
 
Nevertheless, the diagnosis of lateral instability as early as June 2004 and the Veteran's statements concerning the continuity of his symptoms favor the assignment of an earlier effective date for right knee instability. The RO assigned an effective date of June 17, 2013 for the Veteran's 10 percent rating, i.e., the date the VA examiner recorded a +1 Lachman's test. None of the VA examiners offered a medical opinion as to when the Veteran's began to experience slight right knee instability and it is unclear whether the lateral knee instability documented by the private physician in June 2004 constituted the same knee condition described in the June 2013 or June 2014 VA examination reports. Given the Veteran's credible statement that his symptoms remained the same since his in-service injury, the Board finds that the evidence is approximately evenly balanced as to the date the Veteran became entitled to a 10 percent disability rating for slight lateral instability of the right knee. Resolving this uncertainty in the Veteran's favor, see 38 C.F.R. § 3.102, the appropriate effective date for the award of a separate 10 percent disability rating for right knee instability is March 30, 2010, the day VA received his knee claim. See 38 U.S.C.A. § 5110(a). 
 
Next, the Board will consider the rating for dislocated semilunar cartilage with frequent episodes of 'locking', pain and effusion into the joint under Diagnostic Code 5258. In its October 2014 rating decision, the RO assigned a 20 percent rating for this disability, which is the highest schedular rating available. The RO assigned August 23, 2014 - the date a VA examiner diagnosed the Veteran with a meniscus (semilunar cartilage) condition - as the effective date for the Veteran's 20 percent rating under that Code. 

The Board has considered the Veteran's statements to the effect that he has experienced "locking" and pain with motion since his knee injury in service. While the Veteran is competent to report his observable symptoms, as a layperson the appellant is not competent to determine whether his symptoms are due to a dislocated semilunar cartilage. On this point, the Board finds that the June 2013 VA examination report deserves greater weight. The June 2013 examiner specifically stated that the Veteran did not have a meniscus (semilunar cartilage) injury at the time of that examination. Thus, August 23, 2014 is the appropriate effective date for the Veteran's 20 percent disability rating under Diagnostic Code 5258 because that is the earliest date that the Veteran's semilunar cartilage dislocation is ascertainable. See 38 U.S.C.A. § 5110(b)(3) ("The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred . . .")
 
Finally, the Board will consider referral for an extraschedular rating. Such consideration requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating adequately contemplates the Veteran's disability picture. See Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is adequate, and no referral is required. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those described by the regulation as governing norms. If the Veteran's disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether an extraschedular rating is warranted. 
 
The schedular ratings adequately contemplate the Veteran's disability picture. The June 2010 examination report indicated that the Veteran had difficulty walking for more than 15 minutes or 50 feet before he needed to rest. He also reported pain with movement and the need to wear a knee brace. He has also complained of "locking" and "popping" in his knee. The Veteran's pain and "locking" of the right knee are specifically contemplated by the 20 percent disability rating for dislocated semilunar cartilage under Diagnostic Code 5258. Moreover, the evidence does not reflect that the Veteran's right knee disability has caused marked interference with employment, frequent hospitalization, or that the symptoms in his right knee have otherwise rendered impractical the application of the regular schedular standards. The Veteran reported difficulty getting in and out of his truck. But he was apparent capable of accomplishing this task with the help of a brace. According to all of the VA examinations, he maintains substantial range of motion in his affected knee and his knee instability is slight. For these reasons, the Board finds that referral for an extraschedular evaluation is not warranted.
 
 

ORDER
 
Entitlement to a combined rating of 20 percent, but no higher, for disabilities of the right knee prior to June 15, 2013 is granted subject to the laws and regulations governing the award of monetary benefits.
 
Entitlement to a combined rating in excess of 20 percent for disabilities of the right knee between June 15, 2013 and August 23, 2014 is denied.
 
Entitlement to a combined rating in excess of 30 percent for disabilities of the right knee from August 23, 2014 is denied.
 


___________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs